**SMITH KRIVOSHEY, PLLC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELIZABETH OLDAKOWSKI and JOHN MELACKRINOS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>CENTRAL GARDEN & PET COMPANY,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

## NATURE OF THE ACTION

1.     Birdseed for wild birds is a multibillion-dollar industry.  Wild bird food was already a $4 billion industry in the United States before the COVID-19 pandemic, and then birdwatching exploded in popularity as people connected with nature in their own backyards during COVID-19 lockdowns.  Sales went through the roof for seed suppliers, birdhouse builders, and similar businesses.

2.     Defendant Central Garden & Pet Company ("CG&P") is one of the largest birdseed manufacturers and distributors in the United States.  CG&P markets and sells wild bird seed under several brands, including Pennington and Kaytee, which are sold at the largest online and brick-and-mortar retailers in the United States, like Walmart and Amazon.

3.     The packaging for Pennington and Kaytee birdseed states that the they have been specially formulated to attract wild birds.  There are pictures of wild birds on the front panel— presumably the kinds of birds whom the seeds will attract.  The back panels also contain information about the birdseeds and the types of popular wild birds each type of seed supposedly attracts, like cardinals and gold finches.

4.     However, CG&P deceives its customers by loading up the packaging of Pennington and Kaytee birdseed with a filler ingredient that CG&P knows most birds won't eat: milo, also known as sorghum.

5.     In its backyard bird feeding guide, for instance, the U.S. Fish & Wildlife Service warns that no birds appear to like it.  Cornell University's Project FeederWatch, which recruits backyard birdwatchers to assist in annual bird population counts, ***recommends that feeders avoid "mixtures that have a high percentage of less-appealing 'filler' seeds such as red milo."*** Even the Wild Bird Feeding Industry (WBFI), a trade group for birdseed manufacturers, cautions against the use of milo.

6.     And yet, milo makes up well over half of the mix by volume of Pennington and Kaytee brand birdseed.  The practical result is that consumers get half of the bird seed they pay for.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    1

7.      CG&P has made damaging admissions showing that it intentionally deceives consumers.  In contrast to the economy-priced Kaytee and Pennington brands, CG&P also markets higher-priced brands of bird seed called "Wild Delight" and "Better Bird."  For those products, CG&P emphasizes as a selling point that they contain "no milo" or other "fillers."  When hawking that product, CG&P warns that milo attracts "pesky" and "undesirable" birds like crows, and that consumers should avoid birdseed with milo because "desirable birds don't prefer them."

8.      So, CG&P knows that milo is a mere filler ingredient that consumers should avoid when buying birdseed blends because it doesn't attract the kinds of birds that consumers want to attract to their bird feeders.  But that's not what CG&P says about its milo-containing Kaytee and Pennington economy blends.  Instead, it says the opposite:  that those blends are formulated to attract a wide array of desirable birds.  In short, CG&P *knows* that blends containing milo should be avoided by consumers, but it lies to consumers to sell them cheap birdseed.

9.      Accordingly, Plaintiffs bring this false advertising action on behalf of themselves and other purchasers of Kaytee and Pennington brand birdseed.

## PARTIES

10.     Plaintiff Elizebeth Oldakowski is domiciled in West Boylston, Massachusetts.  Plaintiff has purchased the products at issue several times over the last few years, with the last purchase being from a Walmart store in Massachusetts in approximately March 2024.  Plaintiff purchased the product for approximately $15.  Plaintiff reviewed and relied on the product packaging before making these purchases and believed that they were suitable for consumption by wild birds.  If Plaintiff had known the products were falsely labeled, Plaintiff would not have bought them, or would have paid less.

11.     Plaintiff John Melackrinos is domiciled in Chester, New York.  Plaintiff has purchased the products at issue several times over the last few years, with the last purchase being from a Walmart store in New York in late 2023.  Plaintiff purchased the product for approximately $15.  Plaintiff reviewed and relied on the product packaging before making these

purchases and believed that they were suitable for consumption by wild birds.  If Plaintiff had known the products were falsely labeled, Plaintiff would not have bought them, or would have paid less.

12.     Plaintiffs remain interested in purchasing the products at issue.  However, they cannot know for certain whether the false labeling has been or will be corrected.  The composition of the products may change over time, but if CG&P continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiffs will be unable to make informed decisions about whether to purchase CG&P's products.  Plaintiffs are further likely to be repeatedly misled by CG&P's conduct, unless and until CG&P is compelled to ensure that the product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

13.     Defendant CG&P is a publicly traded Delaware corporation based in Walnut Creek, California.  The final decisions and approvals regarding representations made on product labels were made in California.  The final decisions and approvals regarding the formulation of the products at issue were made in California.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

15.     This Court has personal jurisdiction over Defendant because it conducts substantial business and is headquartered in California.  A substantial portion of the events giving rise to the claims alleged here occurred in this state.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

1

**FACTUAL ALLEGATIONS**

2

**I.      Defendant's Conduct Has The Tendency Or Capacity To Deceive Or Confuse
          Reasonable Consumers**

3

4

17.      ***Product at Issue:*** Defendant manufactures, distributes, advertises, and sells

5

Pennington Classic Wild Bird Feed and Kaytee Wild Bird Food.  These products are sold at

6

major U.S. retailers like Walmart, Petco, and Amazon.  The front packaging of the two products

7

looks like this:

8

9

10

11

12

13

14




15

16

17

18

19

20

21

22

23

18.      ***Relevant Time Period:*** The deceptive packaging at issue here was consistent

24

during the last four years, at least.  There have been no material changes to the product

25

packaging during the relevant period.

26

19.      ***Misrepresentations at Issue:***  The names "Wild Bird Feed" and "Wild Bird

27

Food" are misleading because most of the product is milo, which is used as filler that most wild

28

birds will not eat.  Milo may be "food" or "feed" in the general sense, but not to most of the wild birds that the product is intended to attract.  So, describing the products as "food" or "feed" is *itself* misleading.

20.     The overall packaging also misleadingly conveys the impression that the products consist of birdseed that was specially formulated to attract a wide variety of popular birds, when in fact, most of the product is filler that most wild birds will not eat.

21.     The product packaging states that the products "attract[] a wide variety of birds" (Pennington) or "attract[s] a great variety of birds" (Kaytee), and depicts birds that the birdseed is presumably intended to attract, like cardinals, chickadees, and gold finches.  But, in fact, the majority ingredient in these products is a filler (milo) that does *not* "attract a great [or wide] variety of birds."

22.     The back panels of the packaging contain further information about the seeds inside the packaging, and the types of birds they are supposed to attract.  The back panels further reinforce the false impression that the seeds are specially formulated to attract popular wild birds, while not disclosing that the products primarily consist of a filler that those same birds do not eat.

23.     The back panel of the Pennington product states that it is a "blend of **high-quality grains and seeds** that attract a wide variety of beautiful & colorful wild birds."  It then goes on to say that "Pennington® Bird Food has been specially formulated to attract different types of birds based on scientific experimentation.  Today, **the birds' choice of seed**, their dietary requirements and the nutritional value of each ingredient are used to establish a balanced blend."  The packaging also includes a list of the various birds that the birdseed is intended to attract, like blue jays, cardinals, and chickadees:

1

2

3

4

5

6

7

8

9

10

11

 

12    24.    Notably, the primary ingredient, milo, is not even mentioned on the chart.

13    25.    The back packaging of the Kaylee product includes similar information

14    conveying that the birdseed is specially formulated to attract popular wild birds.

15

16

17

18

19

20

21

22

23

24

25

26



27

28

26.     To be sure, unlike the Pennington brand, the Kaylee packaging includes milo on the list of birdseed, claiming that milo attracts sparrows, juncos, and doves.  However, that disclosure is also deceptive because it is just a pretext for using milo as a filler.  As can be seen from the chart, including milo is not necessary to attract sparrows, juncos, and doves because they also eat every other seed included in the product.  At the same time, the chart also confirms that most other birds do not eat milo, but there is no disclosure that the majority of seed in the packaging is milo.

27.     ***How/Why The Conduct Is Misleading***:  Milo is used as a filler that most birds will not eat.  CG&P says as much when selling its higher-priced products.

28.     As one example, in June 2021, CG&P acquired the "Wild Delight" line of birdseed products, which includes the Wild Delight Sizzle N Heat Wild Bird Seed Blend.

29.     The website product page for Wild Delight touts as a "feature" that it has "**No Fillers**" – No Millet, no Milo, and no Corn":



30.     The amazon page for Wild Delight includes more information about attracting wild birds as well as a section titled "How To Avoid Nuisance Birds."  There, CG&P tells customers that to avoid "pesky" or "undesirable" birds, they should "**[r]emove foods with milo or corn**.  These types of foods attract nuisance birds (plus, **desirable birds don't prefer them**.)."



31.     CG&P's marketing of another brand called Better Bird Beautiful Bird Food, provides further proof that CG&P knows that milo is a worthless filler ingredient, because it touts that the product is "Milo-Free":

32.     In short, CG&P knows that milo is a mere filler ingredient that doesn't attract the kinds of birds consumers want to attract to their bird feeders, but instead will attract "pesky" and "undesirable" birds.  But that's not what CG&P says about its milo-containing Kaytee and Pennington economy blends.  Instead, for those products, it says the opposite:  that those blends are formulated to attract a wide array of desirable birds.

33.     Other groups have likewise warned that milo is just a filler that most birds won't eat.  As the author of a 2018 Washington Post article explained:

> [Milo is] a common ingredient in wild-birdseed mixes, including the one I'd been pouring into my feeder.  There's just one problem: **Most common backyard birds won't eat it**. In its backyard bird feeding guide, for instance, the U.S. Fish & Wildlife Service notes that no birds appear to like it.

> Cornell University's Project FeederWatch, which recruits backyard birdwatchers to assist in annual bird population counts, recommends that feeders avoid "mixtures that have a high percentage of less-appealing 'filler' seeds **such as red milo**." Even the Wild Bird Feeding Industry (WBFI), a trade group for birdseed manufacturers, warns on its website that seeds such as milo are "less attractive to birds."

> …

> A number of common "bird feeds," in other words, are comprised primarily of an ingredient that most birds won't eat."[1]

34.     The Missouri Department of Conservation also advises against the use of milo:

> To attract the greatest diversity of birds, the best seeds to use are black oil sunflower, striped sunflower, hulled sunflower and Niger thistle seeds. …  Many components of standard wild bird mixes sold in stores are used by relatively few birds.  ***Put out milo, for example, and you won't have many takers.***"[2]

35.     The city of Worthington, Ohio suggests to its residents that using milo-filled birdseed is more likely to attract rats than desirable wild birds:

---

[1] https://www.washingtonpost.com/business/2018/07/31/why-many-bird-seed-mixes-are-filled-with-stuff-birds-wont-eat/

[2] https://mdc.mo.gov/magazines/conservationist/2000-11/backyard-banquet (Emphasis added)

Use a seed blend for the types of birds you are feeding. ***Seed blends that contain a lot of filler seeds and grains (millet, milo or sorghum) tend to end up on the ground where it attracts rats.***"[3]

36.     Texas A&M University has this to say about milo in bird feed:

***Avoid birdseeds that contain milo*** and wheat. ***These foods are fillers and a waste of money.*** If the birdseed is millet, this will attract doves and sparrows, but not songbirds."[4]

37.     Customers who bought Pennington and Kaytee products at issue likewise complain that birds do not eat the birdseed offered. The complaints below are just a sample. There are many more customer complaints about the products at issue here, all with the same theme: the products are a sham because wild birds won't eat them:

---

[3] https://www.worthington.org/DocumentCenter/View/1834/RatsBirdFeeders?bidId (Emphasis added).

[4] https://aggie-hort.tamu.edu/county/smith/tips/land/attractbirds.html (Emphasis added).

Pennington:

★☆☆☆☆  **Our birds won't touch it**
Reviewed in the United States on February 28, 2024
Started putting this into a 3rd feeder last fall for all the finches and chickadees. They didn't touch it. Then put it in the 2 main feeders in a different area where we always get cardinals, sparrows, dove, finches, and sometimes a blue jay. Since refilling the 2 main feeders and also adding extra sunflower seeds for the cardinals, we have not seen even one bird at the feeders. What's with this stuff?

★☆☆☆☆   Verified Purchase ⓘ            1/19/2024

### Don't buy!!

Terrible seed— 95% Milo, which isn't even listed ... white millet is. The birds won't eat the round reddish Milo balls and toss them out looking for edible seed (of which there is little). Even the squirrels won't eat the Milo seed — it is just a mess on the ground. Waste of money.

★☆☆☆☆   Verified Purchase ⓘ         8/3/2022

### 99% filler

Last two bags were 99% filler. Trying to attract birds, not squirrels. Moving on to another brand.

★☆☆☆☆   Verified Purchase ⓘ          4/15/2023

### DON'T BUY THIS PRODUCT

This product is unacceptable trash. It is full of junk seed. Even the birds wouldn't touch or eat the seed. I literally have a full bird feeder that even the squirrels won't touch. I will never buy Penninglon products again.

1    <u>Kaytee</u>:

2    ⭐☆☆☆☆  **Birds hated it**
     Reviewed in the United States on March 8, 2024
3    Size: 10 Pound (Pack of 1)  |  **Verified Purchase**

4    Except for the sunflower seeds, the rest of the mix was junk. My song birds hated it and simply picked
     out the sunflower seeds. My ducks and geese turned their beaks up at it and would only eat the
5    sunflower seeds. I will not buy it again. I threw 1/2 of it away.

6    ⭐☆☆☆☆  **Great value for money, but my birds aren't interested at all.**
     Reviewed in the United States on January 25, 2024
7    <u>Size: 10 Pound (Pack of 1)</u>  |  **Verified Purchase**

8    I had birds at my bird feeder constantly with a prior mixed bag than this one... I was drawn to this one
     for the price... it was a great deal for the amount of seed! But, my cardinals, mourning doves, finches
9    and robins will literally fly up to the feeder, land for a second, then fly away without eating. I've
     refreshed the seed many times just in case it got wet or something... they still seem to hate it! I can't
10   figure it out!

11   ⭐☆☆☆☆  <u>Birds didnt eat food</u>
     Reviewed in the United States on March 9, 2024
12   Size: 10 Pound (Pack of 1)  |  **Verified Purchase**

13   It is my first time buying this product, and normally I have tons of birds at the feeder, but they would
14   not eat this food. The bag is open so I can't return. So disappointed and so are my cats!

15   ⭐☆☆☆☆  **Birds Dont Like, Wont Eat & Disappeared While Feeding This**
     Reviewed in the United States on February 2, 2024
16   Size: 10 Pound (Pack of 1)  |  **Verified Purchase**

17   Normally buy the most generic 20 lb bag of bird feed that Walmart sells. Was almost out of bird feed ,
     roads were terrible, with more freezing rain, sleet & ice predicted. So, i ordered this.
18   Been feeding birds for years, with every bird native to my area (mid-west) , along with migrates &
     seasonal visitors. Theyre not picky. They eat it all....
19   Except this.
20   Birds completely disappeared while feeding this!
     Not sure why because it looked fine?
21   Wont buy again

22   ⭐☆☆☆☆
     By frank on May 21, 2023
23
     **mostly filler**
24   not much is being eaten by the birds. Most of it goes on the ground. Yes it's cheaper, But if you look at
     how much is not eaten, it's not a bargain.
25

26

27

28

## CLASS ALLEGATIONS

38.     ***Class Definition***: Plaintiffs bring this action on behalf all people the following classes and subclasses:

Nationwide class: all people in the United States who purchased either Pennington Classic Wild Bird Feed or Kaytee Wild Bird Food for personal or household use during the last four years.

Multi-State Consumer Protection Class:  All persons who purchased either Pennington Classic Wild Bird Feed or Kaytee Wild Bird Food for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; (4) in the states of Illinois and New York within the applicable statute of limitations.

California class: all people in California who purchased either Pennington Classic Wild Bird Feed or Kaytee Wild Bird Food for personal or household use during the last four years.

Massachusetts class: all people in Massachusetts who purchased either Pennington Classic Wild Bird Feed or Kaytee Wild Bird Food for personal or household use during the last four years.

New York class: all people in New York who purchased either Pennington Classic Wild Bird Feed or Kaytee Wild Bird Food for personal or household use during the last four years.

39.     Each of the above class definitions is a placeholder that "may be altered or amended before final judgment."  Fed. Civ. P. 23(c)(1)(C).  Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

40.     Specifically excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

41.     ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, each Class or Subclass includes thousands of consumers.  The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery.  Class Members may be notified

of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

42. **_Commonality and Predominance_**.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

(a)   Whether milo is used as a filler in the subject products;

(b)   Whether the product packaging has the tendency or capacity to deceive or confuse a reasonable consumer;

(c)   Whether Defendant intended to deceive consumers;

(d)   Whether Defendant is liable to Plaintiff and Class members under the causes of action alleged in this complaint; and

(e)   Whether Plaintiff and Class members are entitled to any of the forms of relief they seek in this action.

43. **_Typicality._**  The claims of the Plaintiffs are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

44. **_Adequacy_**.  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

45. **_Superiority_**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, _inter alia_, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

46.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

47.     Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

48.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

49.     Plaintiffs bring this cause of action individually and on behalf the nationwide class and each of their respective state subclasses.

50.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

51.     Defendant acted with knowledge and intent.

52.     Plaintiffs allege a claim under all three prongs of the UCL.

53.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

54.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

55.     Plaintiffs also allege a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

56.     As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

57.     Plaintiffs and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

58.     Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

59.     Plaintiffs seeks all relief available under the UCL.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code. §§ 17500, et seq.**

60.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

61.     Plaintiffs bring this cause of action individually and on behalf the nationwide class and each of their respective state subclasses.

62.     Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by engaging in the conduct alleged above.

63.     Defendant knew or should have known that its conduct was false and/or misleading.

64.     Defendant knew or should have known that its conduct was false and/or misleading.

65.     Plaintiffs lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

66.     Plaintiffs and class members have suffered harm as a result of Defendant's violations of the FAL.

67.     Plaintiffs seek all available relief under the FAL.

## COUNT III
### Violations of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*

68.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

69.     Plaintiffs bring this cause of action individually and on behalf the nationwide class and each of their respective state subclasses.

70.     Defendant is a "person" as defined by California Civil Code § 1761(c).

71.     Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

72.     For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

73.     Plaintiffs provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

74.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

75.     Defendant acted with knowledge and intent.

76.     As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

77.     With respect to the CLRA claim, Plaintiffs allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

78.     As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

79.     Plaintiff seeks all relief available under the CLRA.

<u>**COUNT IV**</u>
**Violations of New York General Business Law § 349**

80.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

81.     Plaintiff Melackrinos ("Plaintiff" for purposes of this count) brings this claim individually and on behalf of the New York subclass.

82.     GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

83.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

84.     Plaintiff and the New York class members are consumers who purchased products from Defendant for their personal use.

85.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

86.     The foregoing deceptive acts and practices were directed at consumers.

87.     The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the

products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

88.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

89.     As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

90.     On behalf of themselves and other members of New York class members, Plaintiff seeks to recover seeks all available relief for claims pursued under GBL § 349.

<u>**COUNT V**</u>
**Violations of New York General Business Law § 350**

91.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

92.     Plaintiff Melackrinos ("Plaintiff" for purposes of this count) brings this claim individually and on behalf of the New York subclass.

93.     GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

94.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 350.

95.     Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

96.     Plaintiff and the New York class members are consumers who purchased products from Defendant for their personal use.

97.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

98.     The foregoing deceptive acts and practices were directed at consumers.

99.     The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 350.

100.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Teitler and the New York class members have sustained from having paid for and used Defendant's Products.

101.     As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

102.     On behalf of themselves and other members of New York class members, Plaintiff seeks all available relief for claims pursued under GBL § 350.

### COUNT VI
### Violations of the Mass. Gen. Laws Chapter 93A, § 2

103.     Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

104.     Plaintiff Oldakowski ("Plaintiff" for purposes of this count) brings this claim on behalf of the Massachusetts subclass.

105.     Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

106.     Plaintiff, members of the Massachusetts Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

107.     Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

108.     The Products constitute property under Mass. Gen. Laws Ch. 93A.

109.     Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

        a.     Misrepresenting the approval or certification of goods;

        b.     Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

        c.     Representing that goods are of a particular standard, quality, or grade, if they are of another;

        d.     Disparaging the goods, services, or business of another by false or misleading representation of fact;

        e.     Advertising goods with intent not to sell them as advertised;

        f.     Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

        g.     Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

        h.     Representing that goods have been supplied in accordance with a previous representation when they have not been.

110.     Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold mislabeled Products.

111.     Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

112.    Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

113.    Plaintiff and the members of the Massachusetts Class have suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, *inter alia*, they lost money when they purchased the Products and/or paid an inflated purchase price for the Products.

114.    Defendant knew, should have known, or was reckless in not knowing, that the Products were mislabeled.

115.    Defendant had a duty to disclose mislabeling and misbranding because Defendant had knowledge of the true facts related to the Products prior to marketing and selling the Products.

116.    As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the members of the Massachusetts Class have incurred damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

117.    Plaintiff and the members of the Massachusetts Class have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

118.    Pursuant to Mass. Gen. Laws, Chapter 93A § 9, Plaintiff and the members of the Massachusetts Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, reasonable attorney's fees, costs, and any other just and proper relief available under Massachusetts law.

## <u>COUNT VII</u>
### Breach of Implied Warranty

1.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

2.    Each Plaintiff brings this cause of action individually and on behalf of their

respective state subclasses against Defendant.

3.     Each Plaintiff asserts this cause of action under the laws of the state where they are domiciled.

4.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they were specially formulated and suitable for wild birds, when in fact the majority of the product is filler that wild birds do not eat.

5.     Defendant breached its warranty implied in the contract for the sale of the products because they could not pass without objection in the trade under the contract description: the products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiffs and members of the Classes, and the products do not conform to the implied affirmations of fact made on the marketing and packaging for the Product.  U.C.C. §§ 2-313(2)(a), (e), (f).  As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

6.     Plaintiffs and Members of the Classes purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

7.     The Product was defective when it left the exclusive control of Defendant.

8.     Plaintiffs and Members of the Classes did not receive the goods as warranted.

9.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Members of the Classes have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

10.    Plaintiffs seek all available relief under this cause of action.

## COUNT VIII
### Unjust Enrichment

11.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

12.    Each Plaintiff brings this cause of action individually and on behalf of their

respective state subclasses against Defendant.

13.     Each Plaintiff asserts this cause of action under the laws of the state where they are domiciled.

14.     To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

15.     Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

16.     Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

17.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product was dangerous.  This caused injuries to Plaintiffs and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

18.     Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiffs and the Class Members.

19.     Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

20.     Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

21.     As a direct and proximate result of Defendant's actions, Plaintiffs and the Members of the Classes have suffered in an amount to be proven at trial.

22.     Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

23.     Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the Class and naming Plaintiffs as the representatives of the Class or Classes

b. For an order declaring Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d. For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  August 21, 2024                                        Respectfully submitted,

                                                                              /s/    Joel D. Smith

                                                                              **SMITH KRIVOSHEY, PLLC**
                                                                              Joel D. Smith (State Bar No. 244902)
                                                                              867 Boylston Street, 5th Floor, Ste. 1520
                                                                              Boston, MA 02116
                                                                              Phone: 617-377-7404
                                                                              E-Mail:  joel@skclassactions.com

                                                                              **SMITH KRIVOSHEY, PLLC**
                                                                              Yeremey O. Krivoshey (State Bar No. 295032)
                                                                              166 Geary Street, Ste. 1500-1507
                                                                              San Francisco, CA 94108
                                                                              Phone: 415-839-7000
                                                                              E-Mail:  yeremey@skclassactions.com

                                                                              *Attorneys for Plaintiffs*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Joel D. Smith, declare as follows:

1.      I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for Plaintiffs in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on August 21, 2024 in Killingly, CT.

By:   /s/ Joel D. Smith
Joel D. Smith