Ron Rothstein
(admitted pro hac vice)
RRothste@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:      +1 (312) 558-5600
Facsimile:      +1 (312) 558-5700

Jared Kessler
(admitted pro hac vice)
JRKessler@winston.com
WINSTON & STRAWN LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131
Telephone:      +1 (305)-910-0500
Facsimile:      +1 (305)-910-0505

Veronica Stoever SBN (348175)
VStoever@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone:      +1 213-615-1700
Facsimile:      +1 213-615-1750

Attorneys for the Defendant
CENTRAL GARDEN & PET COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH OLDAKOWSKI and JOHN MELACKRINOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL GARDEN & PET COMPANY,<br><br>Defendant. | **Case No.: 24-cv-05559-YGR**<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Fed. R. Civ. P. 12(b)(6)**<br>**Fed. R. Civ. P. 23(d)(1)(D)**<br><br>Hearing:      December 10, 2024<br>Time:          2:00 PM<br><br>Judge:        Hon. Yvonne Gonzalez Rogers<br>Court:         Courtroom 1 – 4th Floor<br>                   1301 Clay Street<br>                   Oakland, CA 94612 |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on December 10, 2024 at 2:00 p.m., or as soon thereafter as may

4

be heard before the Honorable Yvonne Gonzalez Rogers, Oakland Federal District Courthouse, 1301 Clay

5

Street, Courtroom 1, Fourth Floor, Oakland, California 94612, or pursuant to any remote hearing

6

procedures ordered by the Court, Defendant Central Garden & Pet Company ("Central Garden") moves

7

pursuant to Rule 12(b)(6) and Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure for an order

8

dismissing all claims against Central Garden in this action in whole or in part for failing to state a claim

9

upon which relief can be granted and striking Plaintiffs' class action allegations (the "Motion").

10

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, other

11

pleadings and papers filed in this action, and such other and further submissions, evidence, and argument

12

as may be presented to the Court prior to or at the time of hearing on this Motion.

13

## STATEMENT OF ISSUE TO BE DECIDED

14

Whether Plaintiffs' Class Action Complaint should be dismissed for lack of standing and failure

15

to state a claim upon which relief can be granted and whether Plaintiffs' class action allegations should be

16

17

stricken.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF RELEVANT FACTS ....................................................................... 2

III. LEGAL STANDARD .................................................................................................... 4

    a.   Motion to Dismiss for Failure to State a Claim – Rule 12(b)(6) ...................... 4

    b.   Motion to Strike – Rule 23(d)(1)(D) ............................................................... 5

IV.  ARGUMENT ................................................................................................................. 5

    a.   Plaintiffs Are Not California Citizens and Lack Standing to Assert Claims Under the UCL, FAL, and CLRA ............................................................................................... 5

    b.   Plaintiffs' Statutory Claims (Counts I–VI) Fail Because Plaintiffs Have Not Plausibly Pled Deception. ............................................................................................................ 7

    c.   Plaintiff Oldakowski's Chapter 93A Omission Claim Fails. ............................... 9

    d.   Plaintiffs' Claims Providing for Equitable Relief—UCL, FAL, CLRA, and Unjust Enrichment (Counts I, II, III and VIII)—Fail Because Plaintiffs Have an Adequate Remedy at Law. ...................................................................................................... 10

    e.   Plaintiffs' Implied Warranty Claim (Count VII) Fails. ...................................... 11

        i.   Plaintiffs have not plausibly alleged claims for breach of the implied warranty of merchantability or the implied warranty of fitness for a particular purpose. . 11

        ii.  Plaintiff Melackrinos's Implied Warranty Claim Additionally Fails Because He Does Not Allege Privity with Central Garden. ................................................. 13

    f.   Plaintiffs' Request for Punitive Damages Should be Dismissed. ...................... 13

    g.   Plaintiffs' Nationwide Class Allegations Should Be Stricken....................... 14

V.   CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................. 5

*Bowring v. Sapporo U.S.A., Inc.*,
234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ..........................................................................10

*Bracken v. MH Pillars Inc.*,
290 F. Supp. 3d 258 (S.D.N.Y. 2017) ................................................................................... 13

*Brownell v. Starbucks Coffee Co.*,
681 F. Supp. 3d 27 (N.D.N.Y. 2023) ................................................................................... 13

*Cannon v. Wells Fargo Bank N.A.*,
917 F. Supp. 2d 1025 (N.D. Cal. 2013) ............................................................................ 5, 7

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020) ................................................................................................ 7, 9

*Cosgrove v. Or. Chai, Inc.*,
520 F. Supp. 3d 562 (S.D.N.Y. 2021) ............................................................................. 11, 13

*Elson v. Black*,
56 F.4th 1002 (5th Cir. 2023) ................................................................................................ 5

*Exum v. Stryker Corp.*,
No. 1:13-CV-10247-PBS, 2013 WL 3786469 (D. Mass, July 17, 2013) ........................... 12

*In re Ford Tailgate Litig.*,
No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ............................... 10

*Green v. Covidien LP*,
No. 18 Civ. 2939 (PGG), 2019 WL 4142480, *6 (S.D.N.Y. Aug. 30, 2019) ......................11

*Gustafson v. BAC Home Loans Serv'g LP*,
No. SACV 11-915-JST, 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ............................... 7

*Lockhart v. Wal-Mart Stores, Inc.*,
No. 13-cv-1919-MMA (KSC), 2013 WL 12121260 (S.D. Cal. Nov. 7, 2013) ................... 14

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651 (9th Cir. 2022) ................................................................ 6, 7

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) ................................................................ 4, 5, 7

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ................................................................ 8

*Nemes v. Dick's Sporting Goods, Inc.*,
   521 F. Supp. 3d 328 (S.D.N.Y. 2021) ................................................................ 12

*Opperwall v. State Farm Fire and Cas. Co.*,
   No. 17-cv-07083-YGR, 2018 WL 1243085 (N.D. Cal. Mar. 9, 2018) ................................................................ 14

*Pardini v. Unilever U.S., Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ................................................................ 15

*Pepka v. Kohl's Dep't Stores, Inc.*,
   No. CV-16-4294-MWF, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ................................................................ 5

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 ................................................................ 11, 12

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................ 5

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009) ................................................................ 10

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................ 10

*Soo v. Lorex Corp.*,
   No. 20-cv-01437-JSC, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ................................................................ 15

*Spano v. Domenick's Collision*,
   50 Misc. 3d 143(A), 31 N.Y.S.3d 924 (2d Dep't Feb. 23, 2016)......................................................12

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) ................................................................ 15

*Tomasella v. Nestle USA, Inc.*,
   962 F.3d 60 (1st Cir. 2020) ................................................................ 7, 8, 9, 11

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................................................ 7

*Underwood v. Risman*,
  605 N.E. 2d 832 (Sup. Ct. Mass. 1993) ................................................................. 9

*Van Mourik v. Big Heart Pet Brands, Inc.*,
  No. 3:17-cv-03889-JD, 2018 WL 1116715 (N.D. Cal. Mar. 1, 2018) ........................ 5, 6, 7

*Zapata Fonseca v. Goya Foods Inc.*,
  No. 16-cv-02559-lhk, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ........................... 10

**Statutes**

CAFA (28 U.S.C. 1332(d)) ........................................................................................ 6

Cal. Civ. Code § 3294(a) ........................................................................................ 13

Cal. Civ. Code § 3294(b) ........................................................................................ 14

Cal. Consumer Legal Remedies Act ...................................................................... *passim*

Cal. False Advertising Law ..................................................................................... *passim*

Cal. Unfair Competition Law .................................................................................. *passim*

Mass. Gen. L. ch. 93A ............................................................................................ *passim*

Mass. Gen. L. ch. 93A § 11 ................................................................................... 13, 14

Mass. Gen. L. ch. 93A § 9 ...................................................................................... 6

N.Y. Code § 2-314(1) .............................................................................................. 11

N.Y. Gen. Bus. L. § 349 .......................................................................................... *passim*

N.Y. Gen. Bus. L. § 349(h) ..................................................................................... 6

N.Y. Gen. Bus. L. § 350 .......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 4

Fed. R. Civ. P. 23 ................................................................................................... 5

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................................... 5

Fed. R. Civ. P. 23(d)(1)(D) ..................................................................................... 5

Restatement (Second) of Torts § 551 ..................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs, who admittedly purchased "economy priced" Pennington brand "Wild Bird Feed" and Kaytee brand "Wild Bird Food" (together, the "Products"), complain that the Products do not have the same ingredient profile as more expensive bird seed products. Despite indisputably containing ingredients that attract wild birds, Plaintiffs claim the Products' names "Wild Bird Feed" and "Wild Bird Food" are deceptive because the Products also contain an ingredient called "milo."

On this strained theory of deception, Plaintiffs attempt to state individually, and on behalf of putative nationwide and state-specific classes, the following claims against Central Garden: Count I: Violation of California's Unfair Competition Law ("UCL"); Count II: Violation of California's False Advertising Law ("FAL"); Count III: Violation of California's Consumer Legal Remedies Act ("CLRA"); Count IV: Violation of New York General Business Law ("NYGBL") § 349; Count V: Violation of NYGBL § 350; Count VI: Violation of Massachusetts General Law ("Mass. Gen. Law") ch. 93A; Count VII: Breach of Implied Warranty; and Count VIII: Unjust Enrichment. Each of these claims fails.

To start, Plaintiffs—who are citizens of New York and Massachusetts—have not plausibly alleged a connection between Central Garden's purportedly deceptive conduct and the State of California sufficient to confer upon them standing to bring claims under California consumer protection statutes: the UCL, FAL, and CLRA. For this reason alone, these statutory claims (Counts I–III) must be dismissed.

In addition to standing issues, Plaintiffs' theory of deception is implausible on its face and each of their state-law based statutory claims (Counts I–VI) fails for this reason. Plaintiffs allege the Products' names—"Wild Bird Feed" and "Wild Bird Food"—are misrepresentations because the Products contain milo (which, Plaintiffs allege, wild birds do not like to eat). But inclusion of milo is disclosed on the Kaytee Product packaging, and, separately, Plaintiffs do not dispute that each Product *does* contain ingredients that wild birds *do* eat. Plaintiffs' claim that reasonable consumers would be deceived by the Products' names is implausible, and each of their statutory claims based upon deception should be dismissed. Furthermore, to the extent Plaintiff Oldakowski's Chapter 93A claim is based on

purported omissions, she fails to identify what material information was allegedly omitted from the Products' packaging and fails to make any allegations that could give rise to a duty to disclose such information.

Where Plaintiffs' claims seek equitable relief (Counts I, II, III, and VIII) those claims fail because Plaintiffs cannot plausibly allege the lack of an adequate remedy at law. And Plaintiffs' implied warranty claim (Count VII), which lumps together separate claims based upon the implied warranties of merchantability and fitness for a particular purpose, fails because Plaintiffs have not plausibly alleged the Products are not merchantable (i.e., Plaintiffs do not claim wild birds cannot eat the Products) or a purpose for use particular to Plaintiffs (other than how the Products are generally used; that is, to feed wild birds). Plaintiff Melackrinos's implied warranty claim fails for the additional reason that he cannot allege privity with Central Garden, as required under New York law.

Plaintiffs' boilerplate request for punitive damages should be dismissed because Plaintiffs do not even attempt to plead the type of willful or wanton conduct that could underpin such relief. Indeed, this Court has dismissed punitive damages requests in similar circumstances.

Finally, Plaintiffs' putative Multi-State Consumer Protection Class should be stricken from the Complaint because Plaintiffs do not appear to assert any claim(s) on behalf of this class. Plaintiffs' allegations on behalf of a putative Nationwide class—on behalf of which Plaintiffs attempt to assert claims under the UCL, FAL, and CLRA (Counts I–III)—should be stricken because, as discussed above, Plaintiffs do not have standing under those state statutes. And without standing, Plaintiffs cannot assert those claims on behalf of a putative Nationwide class.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiffs Oldakowski, who lives in Massachusetts, and Melackrinos, who lives in New York, each claim to have purchased Kaytee and Pennington "economy priced" bird seed Products. *See* Compl. ¶¶ 7, 10, 11. They allegedly purchased the Products "several times over the last few years" but most recently purchased from Walmart stores for approximately $15. *Id*. ¶¶ 10–11.

According to Plaintiffs, the "packaging for Pennington and Kaytee birdseed states" that the products "have been specially formulated to attract wild birds." *Id*. ¶ 3. But, they claim, Central Garden "deceived its customers by loading up the packaging of Pennington and Kaytee birdseed with a filler

ingredient . . . that **most** birds won't eat: milo, also known as sorghum." *Id*. ¶ 4 (emphasis added). Though they claim most birds will not eat milo, ***Plaintiffs do not allege that no wild birds eat it*** and do not dispute Central Garden's representation on its Kaytee Product that milo is eaten by wild birds such as the American Goldfinch, Blue Jay, Dark-Eyed Junco, Indigo Bunting Mourning Dove, Spotted Towhee, and White-Throated Sparrow. *Id*. at ¶ 25. But, based upon their theory that *most* birds will not eat milo, Plaintiffs contend the Products' names—"Wild Bird Feed" and "Wild Bird Food"—are misleading. *See id*. ¶ 19. Plaintiffs claim that in making their purchases, they "believed that [the products] were suitable for consumption by wild birds." *Id*. ¶¶ 10–11. But, again, Plaintiffs do not claim that the Products cannot be eaten by wild birds. *See generally* Compl.

Interestingly, though they seemingly take issue with inclusion of any amount of milo in the Products, Plaintiffs do not dispute that other of the Products' many ingredients **do** attract wild birds. The back panel of the Pennington Wild Bird Feed Product contains a chart listing seven of the product's ingredients and identifying the types of wild birds each ingredient attracts. *See id*. ¶ 23. For example, the Product uses Sunflower as an ingredient, which attracts Blue Jays, Cardinals, Chickadees, and Woodpeckers. *See id*. The Product also uses as the ingredient Safflower, which attracts Mourning Doves, Nuthatches, and Sparrows. *See id*. The complete chart, as reflected on the Pennington Wild Bird Feed packaging, is reflected below:




*Id.* ¶ 23. Plaintiffs do not dispute that the Pennington Product contains these ingredients. Nor do Plaintiffs dispute that these ingredients can attract these species of birds. *See generally* Compl. The back panel of the Kaytee Product makes a similar disclosure, listing ingredients and the wild birds they attract:



*Id.* at ¶ 25. For example, the Kaytee Product uses Black Oil Sunflower as an ingredient, which attracts, among other species, Dark-Eyed Juncos, Evening Grosbeaks, and Purple Finches. *See id.* Like with the Pennington Product, Plaintiffs do not contend that the Kaytee Product lacks these listed ingredients or that the ingredients do not attract the species of birds identified on the packaging. *See generally* Compl.

## III. LEGAL STANDARD

### a. Motion to Dismiss for Failure to State a Claim – Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the Complaint. Allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023). A complaint should be dismissed if the facts as pleaded do not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). Indeed, the complaint must establish a

"plausible"—not merely "conceivable"—right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is a "context-specific task," requiring "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *McGinity*, 69 F.4th at 1096 (same).

**b.** **Motion to Strike – Rule 23(d)(1)(D)**

Rule 23 requires the court, "[a]t an early practicable time after a person sues or is sued as a class representative," to "determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); Fed. R. Civ. P. 23(d)(1)(D); *Elson v. Black*, 56 F.4th 1002, 1006–07 (5th Cir. 2023) (affirming order striking nationwide class allegations); *Pepka v. Kohl's Dep't Stores*, *Inc.*, No. CV-16-4294-MWF (FFMx), 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016) (striking class allegations). The court may "require that the pleadings be amended to eliminate allegations about representation of absent persons, and that the action proceed accordingly[.]" Fed. R. Civ. P. 23(d)(1)(D).

## IV.   ARGUMENT

**a.** **Plaintiffs Are Not California Citizens and Lack Standing to Assert Claims Under the UCL, FAL, and CLRA.**

Plaintiffs are citizens of New York and Massachusetts and purportedly bought their Products in those states. Although Central Garden is a citizen of California, that alone is not sufficient to confer standing under the UCL, FAL, and CLRA to out-of-state plaintiffs. *See Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889-JD, 2018 WL 1116715, at *3–4 (N.D. Cal. Mar. 1, 2018) (finding Texas citizen could not sue under CLRA, FAL, or UCL based upon Texas-based transaction); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1055–56 (N.D. Cal. 2013) (dismissing UCL claim where plaintiffs failed to plausibly allege that purported kickback scheme emanated from California).

The threshold question is whether California law encompasses Plaintiffs' out-of-state purchases. *See Van Mourik*, 2018 WL 1116715 at *3. Because this case is before the Court under CAFA, a species of diversity jurisdiction, California law governs the choice of law determination. *See id.*; *see* Compl. ¶

14. California law applies a three-step test to decide which state law applies. *See Van Mourik*, 2018 WL 1116715 at *3. This test requires the proponent of the foreign law to: (1) identify material differences between foreign law and California law, (2) establish that the foreign state has interests in having its own law apply and then, (3) the court applies the law of the state whose interest would be more impaired if its laws were not applied. *See id*. at *2.

There is no dispute that California's consumer protection statutes differ materially from those in New York and Massachusetts. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651 (9th Cir. 2022) (noting differences among 50 states' consumer protection statutes). For example, California's UCL, FAL, and CLRA provide for equitable remedies whereas NYGBL §§ 349 and 350 and Mass. Gen. Law Chapter 93A also provide for damages. *See* NYGBL § 349(h) (providing that any person "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages"); *see also* Mass. Gen. Law ch. 93A § 9. Equally, there can be no dispute that New York and Massachusetts have a clear interest in applying their own consumer protection laws. *See Van Mourik*, 2018 WL 1116715 at *3 ("Each of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." (citation omitted)).

Moreover, California recognizes "that with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest. California considers 'the place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id*. (citation omitted). Here, the last events necessary for liability—i.e., the purported communication by Central Garden of its packaging representations to Plaintiffs and their alleged reliance on the same—occurred in New York (for Plaintiff Melackrinos) and Massachusetts (for Plaintiff Oldakowski). *See* Compl. ¶¶ 10–-11. New York and Massachusetts have a strong interest in regulating false or deceptive advertising seen by their residents, while "California's interest in applying its laws on behalf on non-residents is 'attenuated.'" *See Van Mourik*, 2018 WL 1116715 at *3 (citing *Mazza*, 666 F.3d at 594).

Again, Plaintiffs' Product purchases occurred in their home states. *See* Compl. ¶¶ 10–11. Accordingly, New York and Massachusetts (not California) laws govern Plaintiffs' claims. Plaintiffs

1  cannot sue under the UCL, FAL, or CLRA, and their claims under these statutes (Counts I–III) should

2  be dismissed. *See id*.; *see also Cannon*, 917 F. Supp. 2d at 1055–56; *Gustafson v. BAC Home Loans

3  Serv'g LP*, No. SACV 11-915-JST (ANx), 2012 WL 4761733, at *6 (C.D. Cal. Apr. 12, 2012) (finding

4  plaintiff's allegation that defendant's scheme was devised, implemented, and directed from offices in

5  California was too conclusory to support a claim under UCL); *In re Toyota Motor Corp.*, 785 F. Supp.

6  2d 883, 917 (C.D. Cal. 2011) (dismissing UCL and CLRA claims because plaintiffs "have not alleged

7  with sufficient detail that the point of dissemination from which advertising and promotional literature

8  *that they saw or could have seen* is California." (emphasis in original)); *id.* at 918 ("Plaintiffs cannot

9  recover on an FAL claim because they are not California residents[.]").

10      **b.  Plaintiffs' Statutory Claims (Counts I–VI) Fail Because Plaintiffs Have Not
11          Plausibly Pled Deception.**

12      Plaintiffs' claims under California's UCL (Count I),[1] FAL (Count II), and CLRA (Count III) are

13  governed by the "reasonable consumer" standard. *McGinity*, 69 F. 4th at 1097. That standard requires

14  Plaintiffs to show that members of the public are likely to be deceived. *See id*. "The reasonable

15  consumer standard requires more than a mere possibility that the label 'might conceivably be

16  misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id*. Rather, the

17  standard requires a probability "that a significant portion of the general consumer public or of targeted

18  consumers, acting reasonably in the circumstances, could be misled." *Id*. Plaintiffs' claims of deception

19  under New York and Massachusetts statutes (Counts IV–VI) are evaluated in similar fashion. *See

20  Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (noting sections 349 and 350

21  of the NYGBL are analyzed under the "reasonable consumer" standard); *Tomasella v. Nestle USA,

22  Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) (noting, under Mass. Gen. Law ch. 93A, an act or practice is

23  deceptive if it "has the capacity to mislead consumers, acting reasonably under the circumstances, to

24  act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to

25

26  ─────────────────────

27  [1] Plaintiffs' UCL claim is made "under all three prongs of the UCL." Compl. ¶ 52. To the extent Plaintiffs
    purport to state a claim based on "unfair" or "unlawful" conduct, those claims are based on mere statutory
    regurgitations, *see* Compl. ¶¶ 54–55, and the same allegations underpinning Plaintiffs' theory of deception
28  that are the crux of Plaintiffs' Complaint. As discussed in this Motion, Plaintiffs' fanciful theory of
    deception fails and thus so too do Plaintiffs' boilerplate claims of "unfair" or "unlawful" conduct.

purchase the product).").[2] Here, it is implausible that reasonable consumers would be deceived by the Product names "Wild Bird Feed" and "Wild Bird Food." To start, Plaintiffs concede that each product contains ingredients that *do* attract wild birds. *See* Compl. ¶¶ 21–26. For that reason alone, Plaintiffs' theory is implausible and their claims should be dismissed.

Focusing on the inclusion of milo in the Products—in addition to other ingredients that attract wild birds—does not save Plaintiffs' implausible theory of deception. In alleging that milo does not attract *most* birds, Plaintiffs impliedly concede (as they must) that milo is attractive to some types of wild birds. *See, e.g.*, Compl. ¶ 25. Moreover, Plaintiffs do not (because they cannot) allege that the Products' packaging represents that the Products do not contain, or are free of, milo. In fact, Plaintiffs admit that the Kaytee Product packaging specifically references milo as an ingredient. *See id*. ¶¶ 25–26. Plaintiffs' seeming expectation of a milo-free product in connection to an admittedly economy-priced bird seed is unreasonable and their own allegations concede as much. Plaintiffs point out that Central Garden markets "higher-priced brands of bird seed . . . emphasiz[ing] as a selling point that they contain 'no milo' or other 'fillers.'" *Id*. at ¶ 7. But far from supporting their theory of deception, Plaintiffs' reference to "higher-priced brands," advertised as containing no milo, underscores the unreasonableness of their claims against economy-priced Pennington and Kaytee Products. Plaintiffs fail to plausibly allege that reasonable consumers would expect an "economy priced" product to be free of milo and thus likewise fail to plausibly allege consumers would be deceived by the Products' labels. Plaintiffs' statutory claims (Counts I–VI) should be dismissed. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 878 and 883 (9th Cir. 2021) (noting the "comparatively low price" of defendant's Manuka Honey product and affirming dismissal of plaintiff's claims premised on the theory that defendant's "100% New Zealand Manuka Honey" label was deceptive because the product contained honey other than that derived from Manuka flower nectar); *Chufen Chen*, 954 F.3d at 501 (affirming dismissal of NYGBL

---

[2] In addition to deception, Chapter 93A also proscribes "unfair" conduct. Unfair conduct is that which (1) is within the penumbra of some common law, statutory, or other established concept of fairness, (2) is immoral, unethical, oppressive, or unscrupulous, and (3) causes substantial injury to consumers. *See Tomasella*, 962 F.3d at 79 (affirming dismissal of Chapter 93A claim based on theory that Nestle's failure to disclose on its packaging that its chocolate products likely contain cocoa beans farmed by child and slave labor was deceptive or unfair). Though Plaintiff Oldakowski's Chapter 93A claim is rife with conclusory statutory regurgitations, she makes no plausible allegations of unfair acts by Central Garden apart from the allegations underpinning her claim of deception and, to the extent her claim is based on an "unfair" act, it should be dismissed for the same reason. *See* Compl. ¶¶ 109–112.

§§ 349 and 350 claims and noting plaintiff "bought her Angus Sandwich for less than $4 and her Angus Wrap for less than $2" and that a "reasonable consumer purchasing one of the Products . . . would not be misled into thinking she was purchasing an 'unadulterated piece of meat.'").

### c.   Plaintiff Oldakowski's Chapter 93A Omission Claim Fails.

Although Plaintiffs' Complaint is based on the theory that Central Garden's Pennington and Kaytee Products have misleading names ("Wild Bird Food" and "Wild Bird Seed"), Plaintiff Oldakowski vaguely makes passing reference to "omissions" in her cause of action brought under Mass. Gen. Law ch. 93A. *See* Compl. ¶¶ 110, 111, 115. This claim—if even intended to state an omission-based claim—should be dismissed.

Critically, Plaintiff Oldakowski does not identify what, precisely, she claims was omitted from Central Garden's Pennington and Kaytee Products' packaging. *See id*. ¶¶ 104–115. If her claim is premised on nondisclosure of the ingredient milo, it is belied by her own allegations conceding disclosure on the Kaytee Product. *See id*. ¶ 25. For purposes of a Chapter 93A claim, a "nondisclosure, or an omission, 'is the failure to 'disclose to another a fact that [one] knows may justifiably induce the other to act or refrain from acting in a business transaction . . . [if one] is under a duty to the other to exercise reasonable care to disclose the matter in question.'" *Tomasella*, 962 F.3d at 71. With respect to a commercial transaction, a duty to disclose can arise, for example: (1) when the parties are in a fiduciary relationship, (2) where there is a partial or ambiguous statement, or (3) where one party has subsequently acquired information that the party knows will make untrue or misleading a previous representation. *See id*. (citing *Underwood v. Risman*, 605 N.E. 2d 832, 836 (Sup. Ct. Mass. 1993) (quoting Restatement (Second) of Torts § 551)).

Other than a generic allegation that "Defendant had a duty to disclose mislabeling and misbranding[,]" Compl. ¶ 115, Plaintiff Oldakowski makes no attempt to plead facts that would give rise to a duty to disclose. *See id*. Consequently, to the extent she intended to plead a Chapter 93A claim based on purported omissions, her claim should be dismissed.

DEFENDANT'S MOTION TO DISMISS AND STRIKE
CASE NO. : 24-cv-05559-YGR

### d. Plaintiffs' Claims Providing for Equitable Relief—UCL, FAL, CLRA, and Unjust Enrichment (Counts I, II, III and VIII)—Fail Because Plaintiffs Have an Adequate Remedy at Law.

Plaintiff Oldakowski's claims under the UCL (Count I), FAL (Count II), and CLRA (Count III) provide for equitable relief, which is "not appropriate where an adequate remedy exists at law." *See Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). Where an equitable claim relies on the "same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014).

Traditional "principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests" equitable remedies. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). For this reason, California courts consistently dismiss UCL, CLRA and FAL claims, like Plaintiffs' claims, that rely on the same factual predicate as other actions at law. *See, e.g.*, *id.* (affirming dismissal of UCL and CLRA claims when plaintiff did not lack adequate remedy at law); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-cv-02559-lhk, 2016 WL 4698942, at *7–8 (N.D. Cal. Sept. 8, 2016) (dismissing UCL and FAL claims relying on same facts as claims for breach of contract and fraud because plaintiff had an adequate remedy at law).

Here, Plaintiffs allege they "suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct[.]" Compl. ¶ 57. But Plaintiffs' purchases are also the subject of their implied warranty claim, *see* Compl. Count VII, and, plainly, they have an adequate remedy at law. Because Plaintiffs have an adequate legal remedy, their UCL, FAL, and CLRA claims, which provide for equitable relief, must be dismissed.

The same reasoning requires dismissal of Plaintiffs' unjust enrichment claim (Count VIII).[3] *See Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing unjust enrichment claim that is duplicative of other causes of action); *Tomasella*, 962 F.3d at 83 (affirming dismissal of unjust enrichment claim and noting that "absent showing that Chapter 93A provides an

---

[3] Plaintiffs assert their unjust enrichment claim "under the laws of the state where they are domiciled." Compl. p. 24 at ¶ 13 (misnumbered).

insufficient remedy at law, [plaintiff's] Chapter 93A and unjust enrichment claims are mutually exclusive.").

### e. Plaintiffs' Implied Warranty Claim (Count VII) Fails.

#### i. Plaintiffs have not plausibly alleged claims for breach of the implied warranty of merchantability or the implied warranty of fitness for a particular purpose.

Plaintiffs assert their claim for breach of implied warranty (Count VII) "individually and on behalf of their respective state subclasses[.]" Compl. p. 22, ¶ 3 (misnumbered). And they wrap into this single cause of action claims under the implied warranty of merchantability and implied warranty of fitness for a particular purpose. *See id.* ¶¶ 5 and 6 (misnumbered). Each claim fails.

Under New York law (as to Plaintiff Melackrinos), a claim for breach of implied warranty of merchantability is governed by New York Code § 2-314(1), which provides that a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Goods are considered merchantable if they are fit for the ordinary purposes for which such goods are used. Critically, this "standard does not require that the goods be perfect, ***or that they fulfill [a] buyer's every expectation***; it requires only that the goods sold be of a minimal level or quality." *Green v. Covidien LP,* No. 18 Civ. 2939 (PGG), 2019 WL 4142480, *6 (S.D.N.Y. Aug. 30, 2019) (emphasis added); *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) (noting a "warranty of merchantability" does "not mean that the product will fulfill a buyer's every expectation, but rather simply provides for a minimum level of quality."). Massachusetts law (as to Plaintiff Oldakowski) is similar. *See Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 293–94. In Massachusetts, for goods to be considered merchantable, they must at least be such as are fit for the ordinary purposes for which such goods are used. *See id.*

Plaintiffs' implied warranty of merchantability claim fails because they cannot plausibly allege that the Products—bird seed—are not fit for their ordinary purpose: to be eaten by birds. To be sure, Plaintiffs do not allege that the Products *cannot* be eaten by birds. *See generally* Compl. Moreover, as discussed above, Plaintiffs do not dispute that the Products contain ingredients that wild birds ***do*** eat. *See* Compl. ¶¶ 21–26. Plaintiffs' claims of breach of the implied warranty of merchantability are patently implausible and should be dismissed.

Plaintiffs' claims for breach of the implied warranty of fitness for a particular purpose must meet the same fate. Though buried within the same cause of action as breach of the implied warranty of merchantability, the claims are not the same. *See Nemes v. Dick's Sporting Goods, Inc.*, 521 F. Supp. 3d 328, 340 (S.D.N.Y. 2021) ("The Complaint assert[s] a single cause of action for breach of the implied warranties of merchantability and fitness for a particular purpose. Plaintiffs continue to treat the claims as analytically indistinguishable . . . . This is unfortunate, as the two implied warranties constitute two separate causes of action[.]"). As aptly explained in *Nemes*:

> A particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

*Id.* at 341 (citation omitted). The law is similar in Massachusetts. *See Exum v. Stryker Corp.*, No. 1:13-CV-10247-PBS, 2013 WL 3786469, at *3 (D. Mass, July 17, 2013).

Fatal to Plaintiffs' claim is their failure to allege, plausibly or otherwise, any ***particular*** purpose for which they intended the Products. *See Spano v. Domenick's Collision*, 50 Misc. 3d 143(A), 31 N.Y.S.3d 924 (2d Dep't Feb. 23, 2016) ("there was no breach of an implied warranty of fitness for a particular purpose" as there "was no showing of any 'particular purpose' for which the vehicle was purchased."); *Exum*, 2013 WL 3786469 at *3 ("Plaintiff's failure to allege that the 'particular purpose' of the hip prosthetic differed from its ordinary, purpose is fatal to her claim for breach of the implied warranty of fitness for a particular purpose."); *Rule*, 604 F. Supp. 2d 288 at 297 (dismissing claim for breach of implied warranty of fitness because plaintiff "has not adequately alleged a unique, particular purpose for the use of" the at-issue product), 293–94. Rather, Plaintiffs' allegations confirm that their purchases were to use the Products for their ordinary purposes (not some unidentified particular purpose). *See* Compl. ¶ 10 (Oldakowski "believed the [Products] were suitable for consumption by wild birds); *id*. ¶ 11 (Melackrinos "believed the [Products] were suitable for consumption by wild birds."). For failing to identify any particular purpose for which the Products were purchased, Plaintiffs' implied warranty of fitness for a particular purpose claim must be dismissed.

1

2

### ii. Plaintiff Melackrinos's Implied Warranty Claim Additionally Fails Because He Does Not Allege Privity with Central Garden.

Beyond failing to allege a breach of any purported implied warranty, Plaintiff Melackrinos's claim fails for the additional reason that he does not plausibly plead privity with Central Garden. New York law "requires a showing of privity between the manufacturer and the plaintiff" to state a claim for breach of implied warranty. *See Cosgrove*, 520 F. Supp. 3d. at 586 (dismissing implied warranty claim where plaintiffs acknowledged that they did not obtain the at-issue products directly from defendants). Here, Plaintiff Melackrinos alleges he "purchased the products at issue several times over the last few years, with the last purchase being from a Walmart store in New York in late 2023." Compl. ¶ 11. Though he is somewhat vague about where his purchases, other than his most recent, were made, Plaintiff Melackrinos nowhere pleads that he bought the Products directly from Central Garden. *See generally* Compl. For this reason, his implied warranty claim must be dismissed. *See Cosgrove*, 520 F. Supp. 3d. at 586 (dismissing implied warranty claim when plaintiffs "acknowledge[d] that they did not obtain the [at issue] products directly from Defendant[.]"); *Brownell v. Starbucks Coffee Co.*, 681 F. Supp. 3d 27, 40 (N.D.N.Y. 2023) (dismissing implied warranty claim for lack of privity).

### f. Plaintiffs' Request for Punitive Damages Should be Dismissed.

Plaintiffs fail to plausibly plead a basis for punitive damages. Under California law, punitive damages require allegations of "oppression, fraud, or malice[.]" Cal. Civ. Code § 3294(a). The standard under New York and Massachusetts law is similar. *See, e.g.*, *Bracken v. MH Pillars Inc*., 290 F. Supp. 3d 258, 267–68 (S.D.N.Y. 2017) (collecting cases) (conduct of the party held liable must evidence a "high degree of moral culpability," transcend "mere carelessness," or constitute "willful or wanton negligence or recklessness"); Mass. Gen. Laws ch. 93A, § 11 (providing up to three, but not less than two, times actual damages for "willful or knowing" violations). But Plaintiffs make no plausible allegations demonstrating conduct by Central Garden evidencing a high degree of moral culpability or carelessness. *See generally* Compl. Nor do Plaintiffs allege willful or wanton negligence by Central Garden. *See id*.

Moreover, an entity-defendant, like Central Garden, cannot commit willful or malicious conduct necessary to underpin a request for punitive damages; only an individual can. The alleged conduct

DEFENDANT'S MOTION TO DISMISS AND STRIKE
CASE NO. : 24-cv-05559-YGR

underpinning a punitive damages request "must be on the part of an officer, director, or managing agent" of the company. Cal. Civ. Code § 3294(b); *Lockhart v. Wal-Mart Stores, Inc.*, No. 13-cv-1919-MMA (KSC), 2013 WL 12121260, *7 (S.D. Cal. Nov. 7, 2013) (dismissing punitive damages claims when the plaintiff did not "plead that a corporate officer, director or managing agent . . . took any action amounting to authorization or ratification of the alleged misconduct). Plaintiffs make no allegations (plausible or otherwise) of purported conduct by any of Central Garden's officers, directors, or agents. *See* Compl. Plaintiffs' request for punitive damages is mere boilerplate, lacking any supporting factual allegations. It should thus be dismissed. *See Opperwall v. State Farm Fire and Cas. Co.*, No. 17-cv-07083-YGR, 2018 WL 1243085, *5 (N.D. Cal. Mar. 9, 2018) (Rogers, J.) (dismissing request for punitive damages and noting "[w]hen a plaintiff alleges a claim for punitive damages, a court may dismiss the claim if the plaintiff fails to allege sufficient facts to show 'oppression, fraud, or malice.'").

### g.    Plaintiffs' Nationwide Class Allegations Should Be Stricken.

Plaintiffs propose five putative classes: (1) Nationwide class, (2) Multi-State Consumer Protection class, (3) California class, (4) Massachusetts class, and (5) New York class. *See* Compl. ¶ 38 (defining each of Plaintiffs' five putative classes). As an initial matter, Plaintiffs do not appear to raise any claim on behalf of the "Multi-State Consumer Protection Class." *See* Compl. ¶¶ 49, 61, 69, 81, 92, 104, p. 22 ¶ 2 (misnumbered), and p. 23 ¶ 12 (misnumbered). For this reason alone, Plaintiffs' allegations as to the putative Multi-State Consumer Protection Class should be stricken.

Plaintiffs, neither of whom purchased Products in California, purportedly bring the following claims on behalf of the putative Nationwide class: Count I, violation of UCL; Count II, violation of FAL; and Count III, violation of CLRA. *See* Compl. ¶¶ 49, 61, and 69. But, as discussed above, Plaintiffs lack standing to assert claims under these state statutes. *See supra* Section IV.a. Because no named plaintiff has standing to bring a claim under the UCL, FAL, or CLRA, these claims cannot be maintained on behalf of a putative nationwide class. *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1125 (S.D. Cal. 2021) (the "fact that this action is a putative class action does not excuse Plaintiffs' obligation to show standing for each claim asserted."); *see also Soo v. Lorex Corp.*, No. 2020 WL 5408117, at *10 (N.D. Cal. Sept. 9, 2020) ("While the Ninth Circuit has not definitely answered whether named plaintiffs have standing to pursue class claims under the common laws of states to

which the named plaintiffs have no connection, district courts in this Circuit routinely hold that they do not."); *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (noting that where a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal) (citation omitted).

## V.   CONCLUSION

For the reasons discussed above, Plaintiffs' Complaint should be dismissed and their putative nationwide class allegations should be stricken.

Dated: October 15, 2024

WINSTON & STRAWN LLP

By: *Ronald Y. Rothstein*
Ronald Y. Rothstein
(admitted *pro hac vice*)
RRothste@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone:     +1 (312) 558-5600
Facsimile:      +1 (312) 558-5700

Jared Kessler
(admitted *pro hac vice*)
JRKessler@winston.com
WINSTON & STRAWN LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131
Telephone:     +1 (305)-910-0500
Facsimile:      +1 (305)-910-0505

Veronica Stoever SBN (348175)
VStoever@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave.
Los Angeles, CA 90071
Telephone:     +1 213-615-1700
Facsimile:      +1 213-615-1750

Attorneys for the Defendant
CENTRAL GARDEN & PET COMPANY